## HARVEY DELANO v. THOMAS J. BLANCHARD.*

*Husband and Wife. Wife's Right to Her Clothing. Evidence. Presumption. Damages.*

Plaintiff and his wife agreed to separate, the plaintiff agreeing to give the wife a sum of money and such part of the household furniture as they might agree on, and she agreeing to release all right to his property. The wife went to defendant's, and there committed suicide, whereupon plaintiff demanded a bed, bedstead, baby-wagon, certain furniture and the clothing left by her, and brought trover to recover for the same. There was evidence tending to show that defendant bought the bed, bedstead, and baby-wagon of the wife long before the separation, paid her for them and took them into his possession, and that plaintiff knew it, but made no claim to them till after the wife's death. The court charged that if they were sold without plaintiff's knowledge or consent, and without his subsequent ratification, he could recover, but that if he consented before or after they were taken away, he could not. *Held*, erroneous, for that the jury might have understood that consent or ratification, to avail defendant must have been express, whereas they might be inferred from facts such as the evidence tended to show.

The court charged that before the separation the wife's clothing was plaintiff's property for the use of the wife, and not the wife's, either to sell or to give away, and, that as it was not subject to division under the alleged agreement, it remained the plaintiff's property thereafter, unless there was some arrangement between them whereby it was to become hers and cease to be his. *Held*, that although while husband and wife live together the husband may, perhaps, have control of the wife's clothing to the extent indicated by the charge, yet, as in case of divorce, or death of the husband, the wife's clothing becomes her property, and as here the separation was intended to be final, the plaintiff, in permitting the wife to leave him and take her clothing with her, might be presumed to have relinquished his right to her clothing ; and that the charge being nearly or quite equivalent to a direction to find for the plaintiff upon that point, was erroneous.

One of the demanded articles of clothing was a shawl. Plaintiff, to show its newness offered in evidence copies of his account with a merchant wherein the shawl was charged ; and testified that they were copies given him by the merchant at some time subsequent to the settlement of the account, and to the wife's death ; that they were the only bills of items he had received, he having received a mere memorandum of the balance at the time of settlement ; and that he knew, while the account was accruing that his wife was getting articles there of the kinds charged, but did not know of the purchase of the shawl till some time afterwards. *Held*, that as the entries were not shown to have been made in the regular course of business, nor to have been contemporaneous with the principal fact, they were inadmissible.

Plaintiff testified that the shawl was paid for by wool that was taken from sheep that he gave to his wife, and that she took care of. There was no evidence as to who

*Heard at the February Term, 1878.

kept the sheep. The court charged that the presumption was that if the wife took care of the sheep the husband kept them. *Held,* that there was no such presumption ; that, as the sheep were the wife's, the wool would be hers also, in the absence of any showing to the contrary ; and that when she exchanged it for the shawl, the shawl became hers, especially as the purchase was sanctioned by the husband by his allowing her to keep the shawl, and take it away with her.

As to damages the court charged that if plaintiff was entitled to recover, he could recover the value of the property at the time of conversion—not what the property would bring at auction, as that was not the test, but its " worth as property for the purposes for which such property " existed, " for which it was made, and for which it was held." *Held,* that the rule stated would have been applicable had the wife been alive and living with the plaintiff, but that as she was dead, and as the clothing was therefore worth no more than any second-hand clothing of like kind and in like condition, the charge was erroneous.

TROVER for a bed, bedstead, baby-wagon, Paisley shawl, and certain other articles of household furniture and clothing, and $300 in money. Plea, general issue, and trial by jury, May Term, 1877, BARRETT, J., presiding.

It appeared that on February 4, 1876, the plaintiff and his wife agreed to separate. The agreement was reduced to writing, signed, sealed, and entered in the records of the town where they resided. It was thereby agreed that the plaintiff should pay the wife $300, and give her such part of his household furniture as they might agree on, and that in consideration thereof she should release all rights in law or in equity that she might have to his property real or personal. The plaintiff paid the $300 as agreed ; and on March 19, the wife left the plaintiff's with several trunks containing certain clothing, &c., and went to her brother-in-law the defendant's, where on April 1, she committed suicide. After her death the plaintiff demanded the property left by her, and afterwards brought this action.

The plaintiff testified that his wife purchased two new trunks about the time of the execution of said agreement, with money derived, as he supposed, from the sale of carpets that were sold before the agreement was made, that after the agreement was made she gathered up her clothing and put it into those trunks and two old ones, and that those trunks were taken from his house, with his wife, by the defendant, when she went away as aforesaid ; that a bed, bedding, certain pictures, several articles of furniture and his wife's clothing were missing from his house ;

that none of the household furniture, except certain sheets and pillow-cases, was ever divided, and that he never gave his wife leave, but forbade her, to take away anything; that he was not present when anything was taken away, other than the trunks as aforesaid, but knew she was taking things that she claimed belonged to her under their agreement, and never demanded of any one a return of any of the things that were taken, until after her death. He further testified that he had missed many articles from his house for about a year and a half before his wife left, and claimed that the defendant had a bed, bedstead, a small trunk, and a baby-wagon in his possession that were taken from the plaintiff's house before the agreement was made.

The defendant introduced evidence tending to show that after the agreement was made the plaintiff and his wife divided the furniture, and that the wife took away with her her part thereof, and her clothing with the plaintiff's knowledge and consent; that the plaintiff made no claim to her clothing, or any part of it till after her death, nor said anything whatever about it; that his wife handed her money to the defendant before her death, and requested him to pay her funeral expenses out of it, and pay the remainder to her brother, directed certain articles of clothing, &c., to be given to certain friends, and the rest to himself and his wife; that he purchased the bedstead and the baby-wagon of the plaintiff's wife some time—the baby-wagon six or seven years— before the separation, paid her for them, and took them into his possession; that the plaintiff knew it and made no claim to them until after his wife's death; and that the bed and bedstead came to the wife by way of her mother.

Question arose in regard to a Paisley shawl which the defendant contended was purchased with wool taken from sheep that belonged to the plaintiff's wife. Upon that question the plaintiff offered in evidence copies of his account with S. F. Frary, a merchant, one copy showing debit and the other credit, to show when the shawl was purchased and how paid for. To their admission the defendant objected, but they were admitted, to which the defendant excepted. The copy of the debit side of the account was of various charges for articles of woman's dress, beginning on

February 8, and ending on November 24, 1875, and including a charge of $25 for a Paisley shawl, on October 9. The copy of the credit side was of credits for various articles of produce, during about the same time, including a credit of $24.80, on September 15, for a quantity of wool. The copies of account were not identified otherwise than by the testimony of the plaintiff, which was to the effect that he received them from Frary about a year before the trial, and after the death of his wife ; that they were the only bill of items he had received from Frary, having received at the time of settlement with him in his wife's life-time a mere memorandum of the balance due ; that he knew currently while the account was accruing that his wife was getting articles of Frary of the kind of those that were therein charged, but that he could not tell independently of the bills whether the dates were correct or not. He also testified that he knew nothing about the purchase of the shawl until he was told of it by a third party two or three weeks before the separation. In regard to the sheep from which he testified he supposed the wool that paid for the shawl was taken, the plaintiff testified that he bought them and paid for them, and told his wife, as she took care of them, she might have them, and that when they were sold a note that was given for them was made payable to his wife.

The court charged that before the alleged agreement all the property at the plaintiff's house, including the clothing of the wife, was the plaintiff's and not his wife's ; that as to the clothing, as it was the plaintiff's property for the use of the wife, and not the wife's, either to sell or to give away, and as it was not subject to division by the alleged agreement, it remained the property of the plaintiff thereafter, unless there was some arrangement between the plaintiff and his wife in regard thereto, by which it was to become hers and cease to be his : that as to the other property alleged to have been taken from the plaintiff's house before the separation, as, *e. g.*, the bed, the bedstead, the trunk and the baby-wagon, if they were disposed of by his wife without his knowledge and consent, or without his subsequent ratification, he could recover for them, but that if he consented to it before or after they were taken away, he could not recover for them : that,

as to the shawl, if it was not purchased with the wife's separate means as her separate property, it was, when purchased, the husband's property, and remained his, unless made over to the wife on their separation, or subsequent thereto ; that whether or not it was purchased with her means was not settled by proof that it was paid for by the wool from the sheep, although the husband had testified that he told her she might have the sheep, because it did not appear what the arrangement was in regard to the wool, and because the presumption was, if the wife took care of the sheep, that the plaintiff kept them ; that although the wool credited came to within twenty cents of the value of the shawl, yet as the wool was credited in the plaintiff's account on September 15, and the shawl was not bought till October 9, it did not follow as matter of course that the wool specifically paid for the shawl, and paid for it as the wife's property as distinguished from the plaintiff's ; and that if the shawl was not the wife's separate property when purchased, the probability was that it was in the same category with the rest of her apparel : that if the plaintiff was entitled to recover, he was entitled to recover the value of the property at the time of conversion—not what it would bring at auction sale, as that was not the test, but its " worth as property for the purposes for which such property " existed—" for which it was made, and for which it was held."

To such portions of the charge as are here stated, the defendant excepted.

Verdict for the plaintiff for $196.50.

After verdict and before judgment the defendant moved to set aside the verdict as against the evidence, and for that the jury did not consider whether the furniture was divided, nor whether it was understood that the wife was to have her clothing, nor whether the articles taken before the separation were taken with the plaintiff's knowledge and consent. The motion was supported by an affidavit of the officer who had the jury in charge. The court declined to set aside the verdict, " regarding it impracticable, improper, and of evil example to have the validity of the verdict subject to, and dependent on, such an affidavit."

*W. C. French,* for the defendant.

The charge as to the plaintiff's absolute ownership of his wife's clothing and of the furniture that she had at the time of marriage, was too stringent. This court has established the right of a married woman to her separate personal property, whether acquired before or during coverture. Her rights will be protected at law as well as in equity. *Child* v. *Pearl,* 43 Vt. 224 ; *Bent* v. *Bent,* 44 Vt. 555 ; *White* v. *Waite,* 47 Vt. 502 ; *Perry* v. *Wheelock,* 49 Vt. 63, and cases *passim.* The court would seem to hold that the wife's personal property remains hers until reduced to the husband's exclusive possession. Ross, J., in *White* v. *Waite, supra.* We insist that the wife's clothing is her separate property.

The bed and bedstead never became the plaintiff's. It may be fairly presumed that he always assented to his wife's ownership.

The court erred in admitting the copies of account, and in submitting the question of the ownership of the wool to the jury. There was no evidence as to who kept the sheep.

The rule as to damages was incorrectly stated. The jury should have been told to find the value of the clothing under all the circumstances of the case, not its value " for the purposes for which such property exists", &c. The rule is, the value of the property at the time of conversion. *Thrall* v. *Lathrop,* 30 Vt. 307, and other cases.

The motion to set aside the verdict should prevail. The question is one of law and not of discretion.

*Samuel E. Pingree,* for the plaintiff.

It is an established principle that on marriage the wife's chattels personal vest instantly in the husband, and that those acquired during coverture, also vest in him. 1 Swift Dig. 24 *et seq.* ; 2 Kent Com. 143. This principle extends to household furniture and clothing, whether bought by the wife with her money or otherwise. 1 Swift Dig. 27 ; 7 M. & W. 183.

The wife cannot in any way dispose of such chattels during coverture without the husband's consent, so as to devest him of his rights. This is the necessary corollary of the principle stated. The charge is within this rule.

The question as to the shawl was properly submitted to the jury.

The copies of account were sufficiently identified to be admissible to show that the shawl was new.

The motion to set aside the verdict was properly overruled. The decision should not be revised. *Emerson* v. *Young*, 18 Vt. 603 ; *Newton* v. *Brown*, 49 Vt. 16.

The opinion of the court was delivered by

Dunton, J. The charge of the court below to the jury, as to the first articles named, bed, bedstead, &c., we think, in view of the evidence, was too general. The jury well might have understood from it that they were to find for the plaintiff, as to those articles, unless they found upon his part either an express consent to, or an express ratification of, their disposal by his wife to the defendant. We think such consent might be inferred or implied from the facts and circumstances which the evidence tended to prove ; and that the jury should have been so instructed. What we have here stated applies with special force as to the bedstead and baby-wagon. The defendant's evidence tended to show that he purchased .them both of the plaintiff's wife before the separation ; that the plaintiff knew of such purchase, and that they had been a long time in the defendant's possession, but did not claim them until after his wife's death. Assuming that this evidence is true, we think it is now too late for the plaintiff to disavow the sale of those articles by his wife. He should have done this before. A husband cannot stand by and see his wife use the proceeds of the sale of his property sold by her with his knowledge, and then afterwards reclaim such property. See Schoul. Dom. Rel. 81, 100, and cases there cited.

While the common-law doctrine as to a husband's ownership of his wife's clothing was correctly stated by the court below, we think there was error in their application of it to this case. The conclusion of this part of the charge was so worded that, when taken in connection with the statement before made that the clothing was not embraced within the terms of the articles of separation, it was almost, if not quite, equivalent to a direction by the

court to the jury, that the defendant was liable for the clothing. While husband and wife live together, the former may, perhaps, have control of the clothing of the latter to the extent stated by the court ; but in case of divorce, or the death of the husband, the wife's clothing becomes her property. When the plaintiff and his wife separated, he gave her a certain sum of money and a share of the household furniture, which she took, together with her clothing, and left him, as it was understood by both of them, to take care of herself and never to return to him again, she, in consideration thereof, having attempted to release all her right as his wife, in his property. The separation was intended and understood by both of them to be final. We therefore think that although the clothing is not mentioned in the articles of separation, when the plaintiff permitted his wife to leave him and take her clothing with her, the fair presumption is, that he relinquished all right he had to his wife's clothing, and that the same was thereafter subject to her control and disposal.

Although what we have said as to the clothing will probably dispose of this branch of the case, we think the court erred in admitting as evidence copies of Frary's account, and also in their charge to the jury, both as to the Paisley shawl and upon the subject of damages.

Entries between third parties, to be admissible as evidence, must be made in the regular course of business and be contemporaneous with the principal fact done so as to be a part of the res gestæ. It does not even appear by any competent evidence that the entries in question were ever made by anybody, except upon the copies themselves at the time the same were written ; nor are they bills received by the plaintiff in the regular course of business. All the knowledge the plaintiff could have had in regard to them, was what was communicated to him by some one else. They were admitted as evidence to show when the Paisley shawl was purchased and how paid for ; so that the oath of the plaintiff does not make them evidence. He testified that he knew nothing about the purchase of this shawl until he was told of it some time afterwards by a third party.

The plaintiff testified that he supposed the wool from his wife's

74

sheep paid for the Paisley shawl, but said nothing as to the keeping of the sheep, nor did he claim to own the wool. We do not think there is any presumption as to who kept the sheep. From what appears in the case, the sheep belonged to the plaintiff's wife, and therefore the wool produced by them was also her property ; and when she exchanged it for the Paisley shawl, the shawl became hers, especially as the purchase of the same by her was confirmed or sanctioned by the plaintiff by his allowing her to keep it and take it away with her when she left him.

What the court said upon the subject of damages, would have been proper if the plaintiff's wife had been living, so that the clothing could have been used for the purpose it was intended, and she and the plaintiff were living together as husband and wife ; but after her death, it was worth no more than any other second-hand clothing of the same quality, and in the same condition as to wear, cleanliness, &c. We see no reason why the ordinary rule of damages in actions of trover is not applicable to this case ; but the probable effect of what was said by the court to the jury was to influence them to overvalue this property, while the measure of damages should be its true value, at the date of the conversion, with interest added, if the jury thought that it ought to be, and saw fit to do it.

*Judgment reversed, and cause remanded.*